In the Matter of the Accounting of LAURA L. VAN ALSTYNE et al., as Executors of THOMAS J. VAN ALSTYNE.

THOMAS B. VAN ALSTYNE, as Executor, Appellant; LAURA L. VAN ALSTYNE, Individually and as Executrix, et al., Respondents.

Decedent's estate — gift — evidence — insufficiency of proof to establish valid and completed gift by a decedent to his wife in his lifetime.

1. To constitute a valid gift there must be on the part of the donor an intent to give and a delivery of the thing given to or for the donee in pursuance of such intent and on the part of the donee acceptance.

2. There must be a delivery which results in a present change of dominion and ownership. Intention or mere words cannot supply

the place of an actual surrender of control and authority over the thing intended to be given. A gift cannot be made by creating a joint possession in donor and donee.

3. The wife of testator made certain notes before her marriage, the payment of which was secured by trust deeds on her real estate. After her marriage to the testator he paid to the holder of the securities the principal and interest due thereon and the notes were indorsed over to him. Thereafter, by agreement between testator and his wife, the income from the property was paid to him during his lifetime. After his death the notes and trust deeds were found in a box in the vault of a safe deposit company which had been rented by him in the name of himself and his wife and in which were found his will and private papers. The respondent testified that the testator gave her a duplicate key of the box, but it was found in his desk among his effects after his death. She also testified that she never saw the notes or trust deeds, or either of them, from the time she executed them until after his death and did not know when they were placed in the safe deposit box. Testimony was also given as to conversations between the testator and respondent tending to establish his intention to make a gift. *Held*, that the intention of the testator to give the respondent the amount paid for the notes is not satisfactorily shown, and that, since the box and its contents were in the actual control of testator during his life, and respondent never saw it or exercised any control over it the gift also fails for want of delivery.

*Matter of Van Alstyne*, 147 App. Div. 411, reversed.

(Argued January 8, 1913; decided February 4, 1913.)

APPEAL from that part of an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 5, 1911, which reversed so much of a decree of the Albany County Surrogate's Court as surcharged the account of Laura L. Van Alstyne, as executrix of Thomas J. Van Alstyne, deceased.

The facts, so far as material, are stated in the opinion.

*Thomas F. Wilkinson* for appellant. Neither payment nor gift was made of the notes and trust deeds. Testator took them as purchaser and retained ownership of them

as obligations of Mrs. Van Alstyne. (*Hamlin* v. *Hamlin*, 192 N. Y. 171; Thornton on Gifts, 121.) A valid gift has not been proven. Thus in this case there is no proof of an intent to give nor manual or actual delivery of the notes and deeds of trust, and there is no evidence of a symbolical delivery. Judge Van Alstyne did not put these notes and deeds of trust out of his possession, nor surrender possession of them to Mrs. Van Alstyne. He never even showed her the papers. He did not surrender dominion over them. He did not place them beyond his control, nor did he deliver them to anybody for her benefit. Hence no gift has been made out. (*Young* v. *Young*, 80 N. Y. 422; *Tompkins* v. *Leary*, 134 App. Div. 114, 122; *Grey* v. *Grey*, 47 N. Y. 552; *Trow* v. *Shannon*, 78 N. Y. 446; *Bryant* v. *Bryant*, 42 N. Y. 11; *Beaver* v. *Beaver*, 117 N. Y. 429; *Matter of Bolin*, 136 N. Y. 177; *Wadd* v. *Hazelton*, 137 N. Y. 221; *Matter of Crawford*, 113 N. Y, 386; *Ridden* v. *Thrall*, 125 N. Y. 579.) The burden of proof is with Mrs. Van Alstyne to prove payment or gift. Thomas J. Van Alstyne is dead, and she is giving her version of what occurred; her testimony must be corroborated, and, under such circumstances, the testimony of the living witness should be scrutinized with great care. (*Rouss* v. *Rousseau*, 180 N. Y. 120; *Hamlin* v. *Stevens*, 177 N. Y. 39; *Mahaney* v. *Carr*, 175 N. Y. 454; *Ide* v. *Brown*, 178 N. Y. 26; *Edson* v. *Parsons*, 155 N. Y. 555; *Shakespeare* v. *Markham*, 180 N. Y. 120; *Grey* v. *Grey*, 47 N. Y. 552; *Rogers* v. *Rogers*, 153 N. Y. 349; *Doty* v. *Wilson*, 47 N. Y. 580; *Matter of Rogers*, 10 App. Div. 593.) The evidence shows that testator held the notes as obligations of Mrs. Van Alstyne, and that the rentals of her property were paid to him on account of said obligations. No defense or valid agreement is shown releasing her therefrom. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Parmelee* v. *Thompson*, 45 N. Y. 58; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Robinson* v. *Jewett*, 116 N. Y. 40; *Arend* v. *Smith*, 151 N. Y. 502; *Carpen-*

*ter* v. *Taylor*, 164 N. Y. 171; *Jackson* v. *Irwin*, 2 Camp. 50; *Harris* v. *Clark*, 3 N. Y. 93; *Phelps* v. *Pond*, 23 N. Y. 78; *Fink* v. *Cox*, 18 Johns. 145.)

*Charles Oakes* for respondents. The record presents facts sufficient to establish a gift of the promissory notes and trust deeds to Mrs. Van Alstyne. The relationship of the parties is of importance. Where the relationship of husband and wife exists between donor and donee the rules covering strict proof of gift are relaxed. In such case delivery of the subject-matter is not necessary. (*Tilford* v. *Bank*, 31 App. Div. 565; *Gilkinson* v. *T. A. R. R. Co.*, 47 App. Div. 472; *Matter of Swade*, 65 App. Div. 592; *Sanford* v. *Sanford*, 45 N. Y. 723; *McElroy* v. *A. S. Bank*, 8 App. Div. 46; *Moore* v. *Fingar*, 131 App. Div. 399; *Armitage* v. *Mace*, 96 N. Y. 538; *Fowler* v. *Butterly*, 78 N. Y. 68; *Weigert* v. *Schlesinger*, 150 App. Div. 765; *Matter of Albrecht*, 136 N. Y. 91.) A gift of promissory notes, deeds of trust or other evidence of debt, or of securities may be made without indorsement of the instrument and without written assignment. (*Westerlo* v. *De Witt*, 36 N. Y. 340; *Grymes* v. *Hone*, 49 N. Y. 19; *Gilkinson* v. *T. A. R. R. Co.*, 47 App. Div. 472; *Andrews* v. *Nichols*, 116 App. Div. 645.)

CHASE, J. The testator died October 26, 1903, leaving him surviving Laura L. Van Alstyne, his widow, hereinafter referred to as the respondent, Thomas Butler Van Alstyne, the appellant, a son by a former marriage, and William T. Van Alstyne, a son by the marriage with the respondent. By his will the testator gave to William T. Van Alstyne $15,000, and in the paragraph making the gift preceded the statement thereof by a recital as follows: "Having made advances or given my son, Thomas Butler Van Alstyne, since his marriage and since he left my home, sums of money exceeding in all more than $14,000. I secondly give * * *." He gave the respondent

all his household furniture, plate, pictures; piano, rugs, jewels and other articles used in his house. All the rest, residue and remainder of his property he gave to the respondent and his two sons in equal shares, except that the share of the respondent at her death or remarriage he gave to his son, William T.

Prior to the marriage of the respondent with the testator, she was the owner of certain real property in Washington, D. C. In 1885 she made certain improvements to such property, and to pay in part therefor on December 30, 1885, borrowed $19,200 on three notes. Two of the notes for $10,000 and $5,000 respectively, were given to a trust company. They were each payable to the order of the trust company three years from date, and were each secured by a trust deed of her said real property made by the respondent to named trustees. The third note was for $4,200, and was given to the father of the respondent. It was payable to his order five years from date and secured by a similar trust deed.

On February 17, 1886, the respondent married the testator and thereafter resided in Albany. Her real property in Washington was left in charge of the trustees named in said trust deeds as her agents and they collected the rents, paid therefrom the taxes, insurance, interest on said notes and accounted to her from time to time at Albany.

On March 9, 1887, the testator paid to the trust company the principal and interest then unpaid on the $5,000 note; on January 17, 1888, on the $10,000 note, and on January 1, 1889, to the respondent's father on the $4,200 note. At the time the amounts were so paid for the several notes the testator took them into his possession with the trust deeds held as collateral thereto and said notes were each at the time indorsed by the payee thereof with a direction as follows, viz.: "Pay to the order of Thomas J. Van Alstyne without recourse." Neither of said notes was due at the time they were so transferred

1913.]                 Opinion, per CHASE, J.                [207 N. Y.]

to the testator and nothing had then been paid on the principal of either of them.

Commencing October 2, 1888, the checks received by the respondent from her agents in Washington were indorsed by her and delivered to her husband, who put the amount thereof to his personal account. All of the receipts of the real property so forwarded to her by her agents were delivered to her husband, including the check of July 1, 1903, which was the last check so received prior to his death, and the aggregate amount received by him during that time was $15,006.52.

After the testator's death the notes and trust deeds were found in a box in the vault of a safe deposit company in Albany, which had been rented by the testator in the name of himself and the respondent and in which was the testator's will and private papers.

The question between the parties on this appeal is whether the amounts unpaid on said notes, after crediting said receipts, are assets of the estate of the testator or whether the amounts paid to the owners of such notes, respectively, by the testator were consummated gifts by him to the respondent or were so paid in pursuance of an enforceable contract by which he agreed with her to pay and discharge such notes.

The respondent testified that the testator told her to write to her agents at Washington to retain the rent towards paying off the debt. She further testified that he said to her: "I want you to write to Tyler & Rutherford (said agents and trustees) to turn those notes and trust deeds over to me; I want to pay that debt off, for I will have no debt standing in my wife's name. I said, 'How shall I write it?' He said, 'I will show you how.' I said, 'If you are so kind and generous as to do that, I expect to turn the rentals over to you.' He said, 'That is no more than I shall expect.' Then he went to the library and brought in a slip of paper. He said, 'You write that.' I wrote it, the letter; I gave him the letter

and asked him if it was right.   He said, ' Yes, that's all
right.'   He took the letter and also the slip of paper and
went out."   It does not appear what, if anything, was
ever done with such letter.

The respondent further testified that, prior to the tes-
tator's hiring the safe deposit box in their joint names,
he had told her that she would be named as executrix in
his will, and she testified that she asked him if he was
sure that he had the papers concerning the payment of
the notes and trust deeds in shape so that she would have
no trouble with them thereafter, and that he replied, " I
will fix that; you won't have any trouble about that;
these notes are outlawed."   She testified that on August
2, 1902, after such conversation, her husband asked her
to go with him to sign her name as joint owner in the
safe deposit box, and that while at the safe deposit build-
ing he said, " Your trust deeds and other papers will be
in that box."   She further testified that he gave her
a duplicate key of the box, but it was found in his desk
among his effects after his death.   She never saw the box
during his lifetime.   She also testified that he said to her
that " William, his son, should have $15,000 before
Butler or she had a cent because he had already laid out
large sums of money for Butler and her."   William T.
Van Alstyne testified that his father told him that he
had given his mother about $20,000; and that at another
time, in the winter prior to his father's death, he asked
him if his mother did not owe that money and that he
replied, "No, of course, she doesn't.   When you give a
person a thing they don't owe it back to you; of course
not.   I don't hold that against your mother.   I gave it
to her."   A sister of the respondent testified that the tes-
tator once said to her that he had paid the indebtedness
secured by the mortgage on his wife's property.   The
respondent contends that when the safe deposit box was
opened after his death the notes and trust deeds were
found, among other things, in a package in which was

the title deed to the premises mentioned in the trust deeds, certificate of title, papers relating to tax matters and other personal papers of respondent, as well as papers belonging to a sister of the respondent which had been turned over to the testator for safekeeping. · The respondent also testified that she never saw the notes or trust deeds, or either of them, from the time she executed them until after his death. She did not know when they were placed in the safe deposit box.

The conversation in which he told her to have the agents retain the rents towards paying the debt took place soon after their marriage; but for some reason that does not appear, nothing was paid by the agents on the principal of either note, although the last note was not transferred to the testator until January 1, 1889, about three years after the marriage. The conversation relating to the agents turning the notes and trust deeds over to the testator could not have taken place immediately in advance of his obtaining possession of all of them because he paid the amount due on the notes at different times. The first one was paid March 9, 1887, and the last one not until January 1, 1889. It is apparent that the testimony of the respondent, relating to the conversation with the testator, is made up of fragments of different conversations. The respondent's counsel in his brief asserts that after the conversation relating to turning the notes and trust deeds over to the testator, the respondent indorsed and delivered to her husband all checks for rents received from her agents at Washington. It appears, affirmatively, that the first check was so received October 2, 1888, or about a year and a half after the first note had been obtained by him, and about eight months after the second and last note owned by the trust company was obtained by him. It is not at all clear when the statement was made by her of expectation to turn the rentals over to him. In any event it was made without agreement as to time and it appears to have been a

voluntary and merely an incidental statement. The conversation wholly fails to establish a contract, by which the testator agreed to pay and discharge the notes and trust deeds in consideration of the promise by respondent to deliver to him the rents to be received from the property. Was a valid gift established?

This court said in *Beaver* v. *Beaver* (117 N. Y. 421, 428): "The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. \* \* \* But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips. it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails."

An important fact which must be constantly borne in mind in this case is that the testator was a lawyer of experience. He knew full well that the respondent's real property could not be discharged of record from the indebtedness unless a formal instrument for that purpose was properly executed and recorded. Notwithstanding his knowledge on the subject, the notes were at different times formally transferred to him and he continued at least for years to hold them and the trust deeds in his exclusive personal possession as the apparent and presumptive owner of the indebtedness against the respondent represented thereby. He also knew that in case of his death, or in any other case, the burden would rest upon the respondent to overcome if possible such apparent and presumptive ownership.

If the testator intended to pay and satisfy the indebtedness represented by the notes, and not merely prevent some one outside of his household from holding them against the respondent, he knew how to accomplish that intention and purpose. His failure to formally cancel the notes and satisfy the trust deeds of record indicates very strongly that it was not his purpose or intention to give the amount paid for the notes to the respondent. The testimony tending to show that the testator intended to cancel the indebtedness and give the amount represented by the notes to the respondent consists of conversations, casual in their nature, as compared with the fact that the testator, a trained lawyer under the circumstances shown, retained the possession of and apparent title to the notes and trust deeds. (See *Hamlin* v. *Hamlin*, 192 N. Y. 164, 171.)

The testator did not make his will until a short time before his death. He referred therein to the gifts that he had made to his son, Thomas B. Van Alstyne. He did not therein in any way refer to a previous gift to his wife nor provide therein that the notes should be surrendered to her and the trust deeds canceled of record. He died knowing that the trust deeds existed of record and that the notes remained in form at least showing that he was the owner of them.

The respondent's counsel suggests that the notes may have been retained in the form in which they were found at testator's death because of the possibility of the respondent dying before he died. The suggestion carries with it an admission that the testator never intended to give to the respondent unqualified dominion and possession of the notes and trust deeds. If it was the testator's intention to retain the possession and control of the notes and trust deeds during his life, then it was not a consummated gift. The reply of the testator to the question of the respondent a little more than a year before he died, when in perhaps the last conversation between them

about the notes she asked him if the notes and trust deeds were in shape so she would have no trouble with them, conclusively shows that he then understood that the notes were outstanding against her. He said, "I will fix that," which includes an admission in her presence that up to that time they had not been "fixed," surrendered or given.

The intention of the testator to give the respondent the amount paid for the notes is not satisfactorily shown; but, as we have seen, even if the intention of the testator to make the gift were most satisfactorily shown, the gift would fail unless a delivery of the thing given were also shown.

It was said by Chancellor KENT in *Noble* v. *Smith* (2 Johns. 52, 56) that "delivery, in both kinds of gift, (*inter vivos* and *causa mortis*) is equally requisite, on grounds of public policy and convenience, and to prevent mistake and imposition."

Because many gifts are sought to be shown by oral evidence after the donor's death, it is necessary for the public good to require clear and satisfactory evidence of the fact to prevent fraud and perjury. There must be a delivery which results in a present change of dominion and ownership. Intention or mere words cannot supply the place of an actual surrender of control and authority over the thing intended to be given. (*Beaver* v. *Beaver, supra; Gannon* v. *McGuire,* 160 N. Y. 476; *Curry* v. *Powers,* 70 N. Y. 212; *Jackson* v. *Twenty-third St. R. Co.,* 88 N. Y. 520; *Matter of Bolin,* 136 N. Y. 177; *Ridden* v. *Thrall,* 125 N. Y. 572.)

A physical delivery of a note or other writing constituting a chose in action, with intent to vest in a donee a gift of the indebtedness represented thereby is the most complete delivery that can be made, and consequently it is sufficient to establish the gift. (*Ridden* v. *Thrall, supra.*)

The respondent does not claim that the notes and trust

deeds were ever physically delivered to her. The only asserted symbolical delivery consists in the alleged delivery to the respondent of a duplicate key to the safe deposit box held in their joint names and in which the notes and trust deeds were found in a package as hereinbefore stated with the will and private papers of the respondent after his death. The key so delivered to her was taken into his possession at some time thereafter, whether before the notes and deeds were placed in the box does not appear. The box with its contents was in his actual control during his life, and respondent never saw it or exercised any actual control over it.

The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit.

It was held in *Young* v. *Young* (80 N. Y. 422) that a gift cannot be made by creating a joint possession in donor and donee, even though the intention be that each shall have an interest in the chattel given.

In *Matter of Crawford* (113 N. Y. 560) it was held that where an intention to make a gift of coupon bonds was shown, and the bonds were registered in the name of the alleged donee, that as the donor retained the actual possession of the bonds, the alleged gift was not sustained.

In *Chambers* v. *McCreery* (98 Fed. Rep. 783) an intention to make a gift was shown, but it was held that delivery was not established by evidence that the bonds were deposited by the alleged donor (the husband) for the alleged donee (the wife) in a box in a safe deposit vault, to which the husband and wife each held a key, and where they remained until the husband's death, although the wife went with her husband at various times and assisted in cutting coupons from the bonds.

There was in the case now before us no possible reason for a symbolical delivery. The testator had the immediate actual possession of the notes and trust deeds, and

if there existed any reason why he did not desire to satisfy the trust deeds of record, there could have been no reason why he should not have canceled the notes by some appropriate writing thereon or by actually delivering the notes and trust deeds into the physical possession and control of the respondent. It is true that the old rule requiring an actual delivery of the thing given has been very largely relaxed, but a symbolical delivery is sufficient only when the conditions are so adverse to actual delivery as to make a symbolical delivery as nearly perfect and complete as the circumstances will allow.

In Thornton on Gifts and Advancements (§ 140) it is said: "In determining whether there has been a valid delivery, the situation of the subject of the gift must be considered. Thus if it is actually present, and capable of delivery without serious effort, it is not too much to say that there must be an actual delivery, although the donor need not in person or by agent hand the article to the donee, if the latter assumes the possession."

We repeat that there was nothing in the physical nature of the papers to be delivered in this case, or in the physical condition or the surroundings of the donor, that made a symbolical delivery necessary.

No question of title by survivorship arises upon the facts in this case.

We have assumed for the purposes of this decision that all of the testimony received on behalf of the respondent was properly admitted in evidence.

The alleged gift to the respondent is not supported by any evidence upon which it can be sustained.

The order of the Appellate Division should be reversed and the decree of the surrogate affirmed, with costs to appellant in this court and in the Appellate Division payable out of the estate.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, COLLIN and HOGAN, JJ, concur.

Order reversed, etc.