CLEMENT et al. v. SARATOGA HOLDING CO. et al.

(Supreme Court, Appellate Division, Third Department. January 21, 1914.)

1. BANKRUPTCY (§ 182*)—PREFERENCES—VOIDABLE TRANSACTIONS—"PURCHASER IN GOOD FAITH."

Even though the purchaser of negotiable instruments secured by mortgage is a purchaser in good faith, within the Negotiable Instruments Law (Consol. Laws, c. 38), yet, where the instruments have been executed by an insolvent to hinder, delay, and defraud his creditors, the purchaser cannot defeat the rights of the creditors under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), making such incumbrances void except as to purchasers in good faith and for a present, fair consideration, unless the purchase falls within the class specified.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. § 182.*

For other definitions, see Words and Phrases, vol. 7, p. 5860; vol. 8, p. 7775.]

2. BANKRUPTCY (§ 114*)—RECEIVER—TITLE OF RECEIVER.

The title of a receiver in bankruptcy relates back to the filing of the petition, and the rights of the parties as to an incumbrance issued by the bankrupt to delay and hinder his creditors must be determined as of the time of the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*]

3. BANKRUPTCY (§ 182*)—PREFERENCES—INCUMBRANCES.

A purchaser in due course of business and for value, of bonds secured by a mortgage issued by a bankrupt to delay his creditors, must be considered a bona fide purchaser for a present fair consideration, unless some evidence of bad faith is shown.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. § 182.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. MORTGAGES (§ 532*)—FORECLOSURE—RIGHT OF PURCHASER.**

Code Civ. Proc. § 756, provides that, in case of the transfer of interest, the action may be continued by the original party, unless the party to whom the interest is transferred be substituted. Section 1632 provides that a deed upon foreclosure sale is as valid as if it was executed by the mortgagor and mortgagee and is an entire bar against each of them. *Held,* that where an assignee of a mortgage for value took it without examining to find whether an action was pending for its foreclosure, and the action was continued by his assignor and sold upon foreclosure, the assignee's rights will be held subject to those of bona fide purchasers claiming under that deed, particularly as the assignee was loaning his money at a usurious rate.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1552; Dec. Dig. § 532.*]

Appeal from Special Term, Saratoga County.

Partition by John B. Clement and another, as examiners, against the Saratoga Holding Company and others and the Saratoga Holding Company, Empire Trust Company, Charles H. Bunn, and William J. Delaney, as receivers. From the judgment, the three last-named defendants appeal. In part reversed, and in part affirmed, with modifications.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Butler & Kilmer, of Saratoga Springs (Walter P. Butler and H. H. Corbin, both of Saratoga Springs, of counsel), for appellant receiver.

Wing & Russell, of New York City (Burt D. Whedon, of New York City, of counsel), for appellant Dupre-Bennett Co.

J. S. L'Amoreaux, of New York City (Lucius L. Gilbert and Harry N. Wessell, both of New York City, of counsel), for appellants Empire Trust Co. and another.

David J. Gallert, of New York City (Walter S. Heilborn, of New York City, on the brief), for appellants Goulden & Son.

David Herman, of New York City, for appellant Bunn.

JOHN M. KELLOGG, J.   Concededly the plaintiff was the owner of an undivided one-half of the property, and the controversy arises as to the distribution of the proceeds of the remaining half. The judgments determine, so far as it is important here to consider, that the Empire Trust Company, as a mortgage trustee, is entitled to a part of the proceeds on account of the Dupre-Bennett Company's ownership of bonds of the Saratoga Holding Company, and that the receiver in bankruptcy of the Holding Company is entitled to the balance. The claims of the Empire Trust Company on account of the bonds held by the Illinois Surety Company and by Joseph A. Goulden & Son, and the claim of Charles H. Bunn to impress a lien upon the proceeds, were disallowed.

The Haines Realty Company held the title to the Brackett mortgage upon the Congress Hall property, real and personal, subject, however, to a one-half interest in said property of a prior mortgage of $33,221.52.

The Realty Company had brought an action to foreclose its mortgage and filed a lis pendens therein. While the action was pending it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

borrowed of the defendant Bunn $16,000 upon its bond, acknowledged October 20, 1909, payable a year thereafter, with interest at 6 per cent., and as an inducement to the loan the company repaid to him $2,-000 of the money as a bonus. The bond was secured by an assignment of the Brackett mortgage. The assignment was duly recorded. Appellant Bunn did not know of the lis pendens on file, or that an action of foreclosure was pending. The foreclosure action proceeded to judgment and sale without his knowledge, and the property was sold to Haines for Mrs. Way, his mother-in-law, for $25,000; the terms of sale being cash upon the delivery of the deed. The unpaid taxes against the property, amounting to $14,639.85, were to be assumed by the purchaser and the amount thereof deducted from the bid.

Haines immediately formed the Saratoga Holding Company, with a capital of $100,000. He caused the property to be transferred to it and the stock to be issued, $5,000 to himself for cash, and the other $95,000 was turned over to him for Mrs. Way on account of her alleged interest in the Haines mortgage, or in the property purchased at the foreclosure sale. It is evident that the other stockholders named in the certificate of organization were acting for Haines and had no substantial interest in the business. He controlled the Haines Realty Company, the Saratoga Holding Company, and the business of Mrs. Way, so far as she was interested in the matters in question.

The prior mortgage on the one-half interest in the Congress Hall property was foreclosed and the property purchased by the mortgagees, the plaintiffs herein.

About August 1st the Holding Company issued its mortgage to the Empire Trust Company to secure $200,000 of bonds, and the trustee delivered to Haines for Mrs. Way $75,000 of the bonds.

The appellant Bunn was interested in the mortgage foreclosed to the extent of $16,000 ahead of Mrs. Way's interest therein. The taxes, costs, and expenses to be paid before anything could be realized from the sale on account of the mortgage were $16,943.90. She therefore had at the time of the sale no interest in the proceeds of the sale unless they exceeded $32,943.90, which was the full value of the property sold. There was no consideration received by the company on account of the stock or bonds issued to or for Mrs. Way, and no corporate act is shown authorizing the delivery of them to her.

The Illinois Surety Company had claims upon which it was pressing the Haines Realty Company, and to gain time Haines turned over to it $25,000 of the bonds as collateral to the indebtedness, under a written agreement by which upon the payment of the amount due it the bonds were to be returned and all the proceedings pending against the company to be discontinued. Apparently from the instrument, notwithstanding the receipt of the bonds, the trust company did not relinquish its right to the remedies at hand. The Fourteenth Street Bank, on September 13, 1910, was the owner of a note of the Haines Realty Company for $8,084.34, and on that day Haines renewed it for the company, turning over to the bank $10,000 of the bonds as security. The Security Bank, as successor to the Fourteenth Street Bank, held said note and transferred it, with the bond, to the Dupre-Bennett Com-

pany in June, 1912, after the filing of the petition in bankruptcy against the Holding Company. The said Haines had a life insurance policy upon which a premium of $900 was due, and he requested Goulden & Son, the insurance agents, to advance the premium for him, which they did, receiving at the time $1,000 of the bonds as security therefor. This firm was not a party to the action, although a publication had been made against all unknown persons interested. It has, however, been heard upon this appeal by its counsel who have appeared for the Empire Trust Company. The Trust Company upon the trial amended its answer so as to claim that this firm was a necessary party defendant, and raised the objection that the action could not proceed without the members thereof being made parties, which objection was overruled and an exception taken. The Empire Trust Company was litigating the question whether the mortgage held by it had any validity and whether, in behalf of the bondholders, it had the right to receive any part of the proceeds of the property sold. In that way it represented the firm, and the members of the firm were not necessary parties to the action, although, if they had made proper application to be let in, the court undoubtedly would have granted their motion. Upon the argument it was suggested in behalf of the firm that, if its members had been parties to the action, they might have proved, if necessary, that they had acquired the bonds in good faith without notice of their invalidity. If the evidence fairly foreshadows those facts, it is unnecessary to have them before the court otherwise than through the trustee. If the trustee has not fully protected their interests, they should be allowed to apply at Special Term for permission to intervene.

[1, 2] The petition in bankruptcy was duly filed, November 22, 1910, against the Holding Company, and it was adjudged a bankrupt December 9, 1911. All of the bonds so transferred were a part of the bonds said to have been turned over to Mrs. Way. All of the transactions with reference to them took place within four months of the filing of the petition, except the purchase by the Dupre-Bennett Company of the interests of the Security Bank. The court properly determined that the mortgage and the bonds were issued by the Holding Company when insolvent, and for the purpose of hindering, delaying, and defrauding its creditors. By section 67e of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), an incumbrance placed by the bankrupt upon his property within that time, with such intent, is declared null and void against the creditors of such debtor "except as to purchasers in good faith and for a present fair consideration." None of the purchasers of the bonds, aside from Goulding & Co., paid any present fair consideration for or on account of them. The referee properly determined that the Illinois Surety Company had, or was chargeable with, knowledge of the condition of the company and the manner of the issue of the bonds when it received them and that it was not a purchaser in good faith or for a present fair consideration.

It is urged, however, that if a purchaser of a negotiable instrument secured by a mortgage is a purchaser in good faith within the Negotia-

ble Instruments Law, the Bankrupt Law does not affect him, but only affects the person to whom the bankrupt immediately makes his mortgage or transfer. The date of the bonds and the mortgage indicated to any would-be purchaser that they had been issued within four months. The purchasers, therefore, knew that if the company was insolvent and made the bonds or the mortgage for the purpose of hindering, delaying, or defrauding its creditors, that the mortgage would be of value under the Bankrupt Law only to a purchaser in good faith and for a present fair consideration. That law makes an exception with reference to negotiable instruments held by purchasers in good faith. Such instruments are bought free from equities or defenses existing in favor of the obligors, and are conclusive that the debt is due. It is no assurance, however, that the Bankrupt Law does not apply to the instrument securing the obligation. The Negotiable Instruments Law regulates the rights of the parties to the instrument and the holder, as between themselves, but does not deprive the Bankrupt Law of its full force and effect. In the interest of public policy such a mortgage is declared void, and it can only be saved by showing that at the time or since it left the hands of the bankrupt it has passed for value and for a present fair consideration. The bank from which the Dupre-Bennett Company received the bonds paid no present fair consideration on account of them. They were received simply to secure a renewal note. The purchase by the Dupre-Bennett Company was after the petition in bankruptcy was filed, and therefore that company is chargeable with notice of the proceedings. The title to the receiver relates back to the filing of the petition, and the rights of the parties are determined as of that time. Its claim was therefore improperly allowed.

[3] Goulding & Co. actually advanced money for the bonds they held; there was a present fair consideration moving from them at the time. It is urged that taking the bonds from the president of the company deprives them of the character of purchasers in good faith. It was not an unreasonable circumstance that the president of the company might own $1,000 of its bonds; the amount was not large or the circumstance unusual. They evidently acquired the bonds in due course for a present consideration. They were not present at the trial. When circumstances developed which caused the Trust Company, their representative, to ask that they be made parties so that they might be heard in their own behalf, the motion was denied, and it would seem unjust to distribute the fund in disregard of their rights because they were not in court and did not swear affirmatively that they took the bonds in good faith and without notice. There is no suggestion that they were not entire strangers to all matters relating to the bonds before they acquired them, and under all the circumstances the fact that they advanced a large amount of money on the bonds, in the usual course of business, is persuasive evidence that they did not know of any infirmities connected with them. Under such circumstances, we may well say that a stranger who shows that he has acquired a security for its full value in the ordinary course of business has furnished some evidence of his good faith until circumstances appearing indicate otherwise. Their claim should have been allowed.

[4] Appellant Bunn took the assignment of the mortgage without examining at the clerk's office to determine whether an action was pending for its foreclosure. He had the right to ask to be made a party to the action; otherwise it would proceed without him and the plaintiff would represent his interests. Code Civ. Proc., § 756; Hirshfeld v. Fitzgerald, 157 N. Y. 166, 177, 51 N. E. 997, 46 L. R. A. 839.

Section 1632 of the Code of Civil Procedure declares the effect of a deed upon a foreclosure sale:

"Such a conveyance is as valid as if it was executed by the mortgagor and mortgagee, and is an entire bar against each of them, and against each party to the action who was duly summoned, and every person claiming from, through or under a party, by title accruing after the filing of the notice of pendency of the action."

Notwithstanding the above provision, if the issue was between the plaintiff Mrs. Way, the Haines Realty Company, and the Holding Company, the questionable nature of the entire transaction with reference to the foreclosure and subsequent proceedings could not defeat his rights. But a receiver in bankruptcy in behalf of creditors may well claim the protection of this statutory provision. Such receiver will many times be given greater consideration than could be shown to the bankrupt. Titusville Iron Co. v. City of N. Y., 207 N. Y. 203, 100 N. E. 806.

Appellant Bunn has received nothing from the mortgage foreclosure. He was not made a party to this action, but upon his own petition comes into a court of equity and asks it to pass judgment between him and the creditors. He loaned his money at 20 per cent. interest upon the security of the mortgage. His neglect made possible the situation where the creditors or he must lose their money. They have, for the reasonable profits in trade, expended their money on the faith of the bankrupt's title and its business carried on upon the property. He hardly stands before the court with the clean hands which equity expects a suitor to show. The referee's report and the judgment show that the deed was duly given to the purchaser. The deed recites the consideration actually paid. He argues with force that it was not paid.

We are asked to go through the record to discover evidence upon which the determination of the court may be reversed. Under all the circumstances, the equity of the creditors to the fund outweigh those existing in his favor. He should be left, until the creditors are paid, to such legal remedies as he may have.

The judgment therefore in behalf of the Empire Trust Company on account of the bonds held by the Dupre-Bennett Company is reversed, and the judgment is modified by directing that the Empire Trust Company is entitled to receive on account of the bonds held by Joseph A. Goulden & Son $900 and interest thereon. In all other respects the judgment, as so modified, is affirmed.

Judgment in behalf of the Empire Trust Company on account of the bonds held by the Dupre-Bennett Company reversed on law and facts and claim dismissed, and the judgment is modified by directing that the Empire Trust Company is entitled to receive on account of the bonds held by Joseph A. Goulden & Son $900 and interest thereon;

in all other respects the judgment, as so modified, is affirmed. No costs on this appeal.

The finding that the Dupre-Bennett Company acquired its bonds in good faith and for a present fair consideration is reversed as against the evidence, and the finding is made that the bonds, after they left the hands of the bankrupt, never passed for a present fair consideration, and also that Goulden & Son acquired their bonds in good faith and for a present fair consideration. All concur.