In the Matter of the Estate of JOHN H. SHELLEY, Deceased.

Surrogate's Court, Franklin County, May 2, 1927.

*George Bowers*, for estate of Maud L. Shelley.

*Wm. St. Mary*, for estate of John Shelley.

*A. B. Cooney*, for Ida Lamoy.

LAWRENCE, S. This proceeding comes before the court by agreement between the attorneys for the above estate and the attorney for the estate of Maud L. Shelley.

The question submitted to the court is the ownership of a certain certificate for thirty-five shares of the capital stock of the Shelley Tool Company, valued at about $9,000.

The Shelley Tool Company is a domestic stock corporation having its principal place of business at Saranac Lake, Franklin county. It was incorporated about July 9, 1914, with a capital stock of $10,000, consisting of 100 shares of the par value of $100 each.

The original incorporators were:

John H. Shelley and his wife, Maud L. Shelley.

Nathan Shelley and his wife, Hattie B. Shelley.

At the time of incorporation, John H. Shelley received a certificate for thirty-six shares of the capital stock; Nathan Shelley subscribed for thirty-six shares; Hattie B. Shelley subscribed for eighteen shares, and Maud L. Shelley subscribed for ten shares. These subscriptions made up the full one hundred shares. By the certificate of incorporation these four people became directors of the corporation.

On May 9, 1916, John Shelley executed an assignment of twenty shares of the capital stock to Maud L. Shelley, reciting that he assigned thereby all his stock in the company, together with all his interest in the company to her and authorized her to demand a certificate therefor. A note purporting to be signed by John H. Shelley is appended to the instrument in writing as follows: " I don't know number of shares but mean her to have all." On the same

date a certificate in the usual form, being No. 5, seems to have been issued to Maud L. Shelley for thirty-five shares of the capital stock, and apparently one share was issued to Llewellyn Jerman. This took the place of the thirty-six shares of stock standing in the name of John H. Shelley, the certificate for which seems to have been canceled and surrendered. The certificate for the thirty-five shares issued to Maud L. Shelley was signed by Nathan Shelley as president, and Hattie B. Shelley as secretary. In the spring of 1916 John H. Shelley left Saranac Lake and returned in the late summer or fall. He left again in 1918 and went into the service and died in New York city about November 20, 1918.

Attached to the certificate for thirty-five shares of stock and pasted thereon appear thirty-five two-cent stock transfer tax stamps, all of which have appearing thereon 5/9/16 with the initials H. B. S.

Up to this point there would seem to be no dispute as to what took place.

About December 13, 1916, the form of assignment on the back of the certificate for thirty-five shares of the capital stock was made out purporting to transfer the stock therein represented to John H. Shelley. This purports to be signed by Maud L. Shelley, and it is the validity of this alleged transfer which is questioned here.

Maud L. Shelley died about January 2, 1924, and all of the other original incorporators have died.

The administrators of Maud L. Shelley claim the certificate and urge that there is no validity to the assignment of the stock on December 13, 1916, because no transfer stamps were affixed, and that section 278 of the Tax Law precludes proof of such transfer. They also urge that there is no evidence of delivery of the certificate and that no transfer was ever made on the stock book. The administrators of the estate of John H. Shelley urge that in 1916 John H. Shelley left Saranac Lake and enlisted in the army and thereupon assigned his interest to his wife; that upon his return in the fall he again took up his position as an official of the company and became an officer and director, which he could not be unless he was the owner of stock therein. They urge that all the surrounding circumstances show that John H. Shelley was the owner of the stock in question.

I find no evidence that the stock in question was ever transferred on the books of the corporation. The fact that it was never surrendered to the company for the purpose of the issuance of a new certificate would seem to establish that it was never transferred of record. We now approach the questions:

Was the assignment form executed by the owner of the certificate, Maud L. Shelley?

Was it necessary to have stamps attached in order to entitle the transferee to the certificate and to surrender it for cancellation and receive a new certificate?

Was it necessary to establish actual delivery of the certificate?

Answering the first inquiry: According to the testimony of the witness Jerman, which would seem to be all the evidence offered on the subject, Maud L. Shelley filled out the assignment form and executed it and Jerman witnessed it. This occurred in the office or garage of the corporation.

The duty of affixing or paying for the stamps would seem to be cast upon the transferor. (Tax Law, § 270.)

There is no evidence before the court that there was a failure to pay the tax, but it is assumed that the assignment was the memorandum of the sale, and that as no stamps were attached to it none were secured for the purpose.

*Matter of Ball* (161 App. Div. 79). This case is cited in the briefs submitted. The question before the court there was whether an inheritance tax should be paid on stock in a company in which the decedent had a controlling interest. The deceased placed one-half of his holdings represented by stock in an envelope and handed the same to a son, stating that he was giving the son one-half of his holdings in the company. Thereafter he was still recognized as a majority stockholder, and the court held that the value of the stock was taxable as property of the decedent's estate.

*Sheridan* v. *Tucker* (145 App. Div. 145). In this case an action was brought by the vendor of stock to recover the purchase price, and the court denied his right to recover as he had failed to perform a duty which the law imposed on him, namely, affixing stamps to the stock he sold.

*Bean* v. *Flint* (204 N. Y. 153). The plaintiff here agreed to sell the defendant forty-three shares of corporate stock for $30,000 to be paid for in installments of $5,000 each. The first installment was paid, and after the others were due, an action was brought by the plaintiff to recover the balance of the purchase price. Stamps were not affixed. The plaintiff there alleged full performance of the agreement to sell. The defendant did not allege failure to affix the stamps as a defense. The court held that failure to affix the stamps was a defense, but that it must be pleaded in order to be taken advantage of. The decision was by a divided court. It is apparent that if the decision had been otherwise the court would still have held that the duty to affix the stamps was cast upon the vendor.

*Ambrosius* v. *Ambrosius* (167 App. Div. 244). A gift of stock to an infant is not void by failure to affix stamps, as that is the duty of the donor.

*Gaffney* v. *People's Trust Co. of Binghamton* (191 App. Div. 697; affd., 231 N. Y. 577). In that case a stockholder of record was compelled to pay an assessment — statutory liability — because of the insolvency of the company. He sued to recover the amount so paid from the actual owner. He proved the assignment of the certificate representing the stock and proved possession of such certificate by the transferee until his death and possession by his executor. No stamps were attached to the certificate. The court held that as the assignment of the certificate was in blank, there should have been a memorandum of sale to which the stamps should have been attached as provided by section 270 of the Tax Law, and further held that their not appearing on the certificate was not evidence of the non-payment of the tax.

*Matter of Raleigh* (75 Misc. 55). Surrogate HEATON in this case seems to have held rather reluctantly that a certificate of stock could not be admitted in evidence where the delivery of the certificate was made without having the stamps affixed at the time.

*Hall* v. *Davis* (95 Misc. 315). Plaintiff claimed damages against defendant's testator for converting 200 shares of stock. She claimed that when she was the owner of the stock she borrowed money from defendant's testator, her brother, and deposited the stock with him as security. She sought a return to her of the stock. The certificates indorsed in blank were in his possession at the time of his death, and the defense claimed that the transfer was absolute. The certificates were offered and received in evidence but had no stamps attached. Plaintiff's objection to the admission of the certificates in evidence was based on the failure to pay the tax. The plaintiff contended that the statute could only have one meaning, and that under no circumstances could proof of a sale be offered where the tax had not been paid at the time of transfer. As was said in that case, such a construction would nullify other provisions of the statute and make it impossible to recover a penalty for failure to affix the stamps because a sale must be proven in order to establish a penalty.

*Luitwieler* v. *Luitwieler Pumping Co.* (231 N. Y. 494). This case holds that when the only question presented is the right to have the stock transferred on the books of the company, the State is fully protected if the stamps are annexed or the tax is paid at the time of the requested registration. To a similar effect is the case of *Smyth* v. *Pure Ice Co. of Williamsburg* (193 App. Div. 479).

In view of the above cases and the law, it would seem that it was the duty of Maud L. Shelley to provide and pay for the necessary stamps, and that John H. Shelley had no obligation to perform in that respect, and that if there was a transfer of ownership to John H. Shelley he would have the right to insist on the registration of the stock and the surrender of the certificate with the necessary stamps provided.

We, therefore, approach the query as to whether there was a valid transfer of the stock. Section 162 of the Personal Property Law (as added by Laws of 1913, chap. 600) provides that title to a certificate and to the shares represented by it can be transferred: (a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares.

" Delivery " means voluntary transfer of possession from one person to another.

*Reinhard* v. *Roby Co.* (110 Misc. 152). Certificates of stock transferred without indorsement by a husband to his wife impose on the husband the duty to complete the transfer, and if he dies without doing so the wife can maintain an action to compel the corporation to transfer the same upon the books.

There would seem to be a growing tendency to make stock certificates partake of the nature of negotiable paper.

There can be little doubt that in this State delivery of the thing given is, as a general rule, one of the essential elements to constitute a gift. It is also true that the rule is not an inflexible one. Where there is an instrument of gift, like an assignment, the actual delivery of the thing assigned is not necessary. There are cases holding that there must be either a delivery of the thing assigned or a delivery of some instrument showing an intention to transfer the subject-matter of the gift. (See *Matter of Van Alstyne*, 207 N. Y. 298.)

In *Rix* v. *Hunt* (16 App. Div. 540) the court holds that in order to constitute a valid gift *inter vivos*, the donor must be competent to contract, there must be a freedom of will, the gift must be completed with nothing left undone, the property must be delivered by the donor and accepted by the donee, and the gift must go into immediate effect. It further holds that a gift *inter vivos* may be sustained although there is no direct and positive proof of delivery. It is urged by the representatives of the estate of Maud L. Shelley that the assignment was a gift and that the rules governing gifts should be controlling here. It would seem to me that the facts disclosed here should not be govered by the strict rules announced in *Matter of Van Alstyne* (*supra*). I believe that we must look at the

situation of the parties at the time the original stock was issued and trace the course of events in order to get a picture of the various situations and the reasons for the acts of the parties. It may be well to restate that John H. Shelley was one of the original incorporators and that a certificate for thirty-six shares was issued to him as such. Maud L. Shelley, his wife, was also an original incorporator, and a certificate for ten shares was issued to her. This was about July, 1914. In the spring of 1916 John H. Shelley left Saranac Lake, and May ninth of that year is the date when he surrendered his thirty-six shares, and a new certificate for one share was issued to Llewellyn Jerman and a certificate for thirty-five shares was issued to his wife, Maud L. Shelley. An instrument in writing, executed by him at the time, states that he desired her to have all his interests in the company. He returned in the fall of that year, and it may be safely inferred that he desired to again assume his former position as an officer and director of the company which he had helped to organize. His wife, the then owner of the certificate for thirty-five shares, evidently talked with him about the matter, for the testimony discloses that she made a statement to the effect that he wanted his stock and position back again. It appears that a few days before December 13, 1916, she stated that she thought that she would have to comply with his request. On December 13, 1916, she made out and signed the assignment form on the back of the certificate in question and her signature was witnessed. She evidently took the certificate with her after it was signed. An annual meeting of the corporation was held on December 22, 1916. John H. Shelley was elected treasurer and director of the company. Maud L. Shelley, who appears to have been vice-president of the company, seems to have been present at the meeting. At the annual meeting in December, 1917, John H. Shelley was continued as an officer and director of the company, and Maud L. Shelley, then vice-president, attended the meeting. Another meeting was held on November 30, 1918, after the death of John H. Shelley, at which a new treasurer was elected in his place.

Section 55 of the Stock Corporation Law (as amd. by Laws of 1923, chap. 787) provides that directors shall be stockholders unless otherwise provided in the certificate of incorporation or the by-laws. The certificate of incorporation is silent upon this point, and there is no information before the court to indicate that a director could serve who was not a stockholder.

The certificate of stock in question was evidently kept in the safe of the company in its office. Both John H. Shelley and Maud L. Shelley had access to the same. The circumstances surrounding

the possession of the stock in the safe would point more strongly towards possession being in John H. Shelley than being in Maud L. Shelley.

The surrounding circumstances, the execution of the assignment, the statement of the intention to assign, the subsequent recognition of John H. Shelley as a stockholder, can only point to a conclusion which can hardly be escaped, namely, that he was the owner of the stock in question and was so recognized by his wife and all others interested.

What occurred at the bank after the death of Maud L. Shelley does not seem to be of much force, nor do I consider what took place at the meeting said to have been held in December, 1918, at the home of Maud L. Shelley to be of any particular value in determining the issues here.

Decree may be settled in accordance with above, awarding the stock to the estate of John H. Shelley.