In the Matter of the Estate of DELBERT E. CRONKRITE, Deceased.

Surrogate's Court, Clinton County, March 15, 1937.

*Egbert C. Everest,* for George A. Cronkrite, administrator.

*Pierce & Holcombe* [*Kenneth H. Holcombe* of counsel], for Myrtle R. Taylor.

HARRINGTON, S. The administrator, as petitioner herein, brings this discovery proceeding under sections 205 and 206 of the Surrogate's Court Act to recover five certificates of stock alleged to have been owned by decedent at the time of his decease. The answer of Myrtle R. Taylor, sister of the decedent, alleges that the securities in question were given to her by her brother on or about December 7, 1935. The testimony indicates that the securities in question had a market value of approximately $500. The securities in question were produced at the hearing. All of them are registered in the name of the decedent and no indorsement was made by the decedent of any of them. The administrator is the father of the decedent.

The decedent died on December 23, 1935. He had undergone an operation at Montreal on June 3, 1935, and returned home about two weeks thereafter. Later, and in November, 1935, he became confined to his bedroom and remained there until his death. The evidence indicates that the value of the securities, as above mentioned, together with other assets coming into the administrator's possession, would just about be sufficient to reimburse the father for hospital bills, medical attention and funeral expenses paid by him personally on behalf of his son and a reasonable sum for necessary expenses of administration of the estate. The decedent was forty-seven years of age at the time of his death and by occupation was a railroad trainman. He was unmarried and lived with his father and mother at Rouses Point, both of whom are elderly persons.

The only testimony offered in behalf of Myrtle R. Taylor to sustain the allegation in her answer that the securities in question had been given to her by her brother, is that of Morris Pombrio, a friend of decedent. He testified that he used to stop about once a week to see the decedent during his last illness; that about two weeks before decedent's death he was present in the decedent's bedroom and Myrtle R. Taylor came in. When asked to relate what occurred, he testified as follows: " Mr. Cronkrite asked me if I wanted to see the stocks and I said yes. He told Mrs. Taylor to get the stocks. · He handed them to me and showed them to me and explained about them, the stocks. * * * After looking them over, he handed them back to me and then to Mrs. Taylor and told her to keep them they were hers." On cross-examination he testified that the stock certificates were in a bureau in the same bedroom occupied by decedent; that they were in a large envelope when handed to decedent; that decedent opened the envelope, pulled the stocks out, looked at them and handed them to him; that he then handed them back to decedent; that when both he

and the decedent had finished looking at them, the decedent " gave them to Mrs. Taylor and told her to keep them." Nothing was said by the decedent upon that occasion with reference to his illness and especially with reference to whether or not he expected to recover. The witness identified three of the stock certificates as being those above mentioned but could not recall the other two. Upon redirect examination the witness was asked whether Myrtle R. Taylor made any remarks when the stock was handed to her and he replied: " She just thanked her brother. Said she would do anything she could for him." The evidence indicates that Mrs. Taylor assisted in caring for her brother during his illness and had visited him while he was in the hospital at Montreal.

On December 16, 1935, Mrs. Taylor wrote Crown Trust Company, Montreal, P. Q., with reference to the Siscoe Gold Mines stock, stating that her brother was very ill, that he had handed her the stock certificates and requested to be advised whether there was any other paper she should have in order to have her " rights." Under date of December 18, 1935, said trust company wrote Mrs. Taylor advising her that in order to transfer the stock certificates registered in the name of Delbert E. Cronkrite, it would be necessary to have him indorse the certificates and have his signature guaranteed by a bank. The letter also advised the amount to be forwarded to cover the necessary stock transfer stamps. This letter was received by Mrs. Taylor on December nineteenth, or four days before her brother's death. The testimony of the attending physician indicates that the decedent was not seriously ill until two days before he died. The testimony of a brother of the decedent indicates that decedent had at various times expressed his intention of going to California as soon as he recovered from his illness. In fact, there was no testimony to indicate any belief of the decedent that he would not recover.

Shortly after decedent's funeral his mother and a brother went to the home of Mrs. Taylor and asked her if she had any papers of any kind belonging to the decedent and she denied having any such papers. Later an attorney for the administrator also interviewed her with respect to the same matter and again she denied having any papers of any kind belonging to the decedent. Under these circumstances, does the testimony offered to establish the alleged gift, in light of the surrounding circumstances in connection therewith, as above mentioned, suffice to establish a gift of these securities by the decedent to Mrs. Taylor?

The elements necessary to constitute a valid gift are well established. There must be an intent to make an immediate gift, a delivery of the thing given and an acceptance of the gift. (*Matter*

*of Van Alstyne,* 207 N. Y. 298, 308; *Matter of Fonda,* 206 App. Div. 61, 62.) Proof of a gift must be clear and convincing and, satisfactory. (*Matter of Van Alstyne, supra,* p. 306; *Ward* v. *N. Y. Life Ins. Co.,* 225 N. Y. 314; *Matter of Sherman,* 227 id. 350; *Mc Keon* v. *Van Slyck,* 223 id. 392.)

In a discovery proceeding the burden of proof is upon a respondent, the one who sets up the gift. (*Matter of Housman,* 224 N. Y. 525; *Matter of Canfield,* 176 App. Div. 554.)

A valid gift may be made of non-negotiable instruments without a written assignment thereof. (*Ridden* v. *Thrall,* 125 N. Y. 572, 577; *Orton* v. *Tannenbaum,* 194 App. Div. 214, 222; *Matter of Mills,* 172 id. 530, 536; *Gilkinson* v. *Third Avenue R. R. Co.,* 47 id. 472, 476; Pers. Prop. Law, § 170.) However, mere possession of non-negotiable instruments is not evidence of ownership in the possessor. (*Cuyler* v. *Wallace,* 183 N. Y. 291, 300; *Matter of Perry,* 129 App. Div. 587, 589.) Furthermore, possession of securities by a member of the family of a decedent having access to his papers proves nothing in derogation of the ownership thereof by the decedent. (*Matter of Canfield,* 176 App. Div. 554, 557.)

No objection was made to the receipt in evidence of the stock certificates in question under section 278 of the Tax Law, by reason of the fact that the necessary stock transfer stamps had not been attached thereto. Presumably, such an objection is available only to the transferee and not to the transferor of such certificates and then only when such defense is pleaded. (*Wylie* v. *Addoms,* 268 N. Y. 160; *Cooper* v. *Gossett,* 263 id. 491; *Bean* v. *Flint,* 204 id. 153, 164; *Ambrosius* v. *Ambrosius,* 167 App. Div. 244, 245; *Matter of Borst,* 129 Misc. 424, 426; *Matter of Sullivan,* 133 id. 758, 762.)

Having in mind the law applicable to the determination of the question at issue, as above mentioned, I do not believe that the claimant of these securities has established her title to them by such clear and convincing testimony as is required in such cases. While it is true that the testimony of a disinterested witness is given with respect to the alleged gift of the securities, the other circumstances in connection therewith are such as to cause great doubt in the mind of the court that the decedent intended to divest himself of the title to these securities on the date of the alleged gift thereof to his sister. It is clear from the testimony that his sister had access to these securities for sometime prior to his death. At least four days before his death she was informed that in order to perfect title in her to one of those securities she must have the same indorsed by her brother and remit the necessary amount of stock transfer stamps. Her brother's condition did not

change for the worse until two days after she received that letter, according to the testimony of the physician. There is no evidence that she ever suggested the matter to him. After his decease she repeatedly denied having any of his papers in her possession, although questioned on the matter by members of her family and by the attorney for the administrator. The conduct of the claimant, as above mentioned, throws grave doubt upon the mind of the court as to the truthfulness of the testimony respecting this alleged gift. Why such secrecy in connection with it, not only before the death of her brother but even a denial of having any of his papers made by her upon two occasions after his decease? The testimony indicates clearly that the relationship between this claimant and her parents is not at all friendly; that a heated discussion occurred shortly after her brother's death with respect to the matter of whether she or her father would be appointed administrator of her brother's estate. All of these surrounding circumstances are such that I am satisfied the claimant has not sustained the burden of proof which is hers of establishing this alleged gift by clear and convincing testimony. I, therefore, hold that the claimant has failed in her proof to establish such a gift and an order may be entered pursuant to section 206 of the Surrogate's Court Act, directing the said Myrtle R. Taylor to deliver the securities in question to the administrator herein.

Prepare decree accordingly.