John C. Boylan, S.
This is a discovery proceeding brought by the administrator to recover the sum of $2,073.17, the balance on deposit in the Chemical Corn Exchange Bank in an account designated ‘ ‘ Calvert Mills Special ’ \ The administrator seeks to have this bank account declared an asset of the estate while the respondent contends, in his answer, that the decedent gave this property to Mildred Miller Dunne Mills as a gift. The respondent is the husband of decedent’s niece, Mildred Miller Dunne Mills.
The decedent, Elizabeth D. Miller, the alleged donor, was 81 years of age when she died on June 11, 1955 and during the last year and one half of her life she suffered impaired sight and other ailments. Prior to May 13, 1955 she had an account in her individual name in the Chemical Corn Exchange Bank against which she had given a power of attorney to her daughter. The decedent and her daughter were not compatible so she (decedent) signed an undated power of attorney to respondent which was acknowledged on May 10,1955.
In order to effectively eliminate any control the daughter might have over this account a bank official informed the respondent that the money then on deposit in the decedent’s name should be withdrawn and deposited in a special account. -Accordingly, on May 13,1955 the-respondent withdrew all of the funds in this account which at that time amounted to $3,036.23 and deposited it in the account designated “Calvert Mills Special ’ ’.
*1061 The respondent contends that on May 10, 1955 the decedent sought to make a gift of certain shares of stock to her niece, Mildred Miller Dunne Mills, and that she was unable to find the stock certificates. As an alternative she gave the balance in her checking account to her niece. The only testimony as to this alleged gift was given by the respondent, the niece’s husband. This transaction is supposed to have taken place in the donor’s bedroom in the presence of the alleged donee and her husband. The decedent’s daughter visited the room and denied taking the securities. The decedent said in substance, if I cannot give Mildred my stocks then I want you (Calvert Mills) to give my account to your wife. It is alleged that Mildred responded in substance as follows: I will accept the gift. I am very grateful and thank you very much. There was no physical transfer of anything to the donee.
From the time of the alleged gift to the date of decedent’s death, a period of about one month, 19 checks were drawn against this account so that there remains a balance of $2,073.17. All of the funds withdrawn were used exclusively for the benefit of the decedent or her daughter. On May 11, 1955, the day after the alleged conversation, the decedent, herself, signed a check for $150 which was deducted from this account with the respondent’s permission. The Mills special account was never closed and the balance, $2,073.17, is still on deposit.
Conduct reflects intention. In Richardson on Evidence (8th ed., § 170) it is said: “ The existence of a design or plan is evidenced chiefly by conduct, and the kinds of conduct are innumerable ”. The conduct of the parties after the alleged gift was inconsistent and at variance with the elements necessary to perfect a gift. According to the testimony the alleged gift was initiated on May 10, 1955 as shown by the conversation set forth above. However, on May 11, 1955 the alleged donor drew a check in the sum of $150 payment of which although given to the bank by the respondent indicates that the donor had not divested herself of dominance and control. The opening of the account on May 13, 1955 designated “ Calvert Mills Special ’ ’, is not consistent with the claim of a valid gift to his wife. Presumably Mr. Mills in his conversation with the bank official did not tell him of the gift but confined himself to the contents of the power of attorney and the powers granted decedent’s daughter. If this is not so, it is difficult to understand the advice given by the bank official. The donor, Mrs. Miller, could have made a joint account with Mrs. Mills, or made a trust account in which the grantee would have been the beneficiary and the grantor could have granted authority to the *1062 bank to honor withdrawals signed by the beneficiary. There were 19 checks drawn and honored during the existence of the “Calvert Mills Special” account, all of which were simple transactions and certainly could have been performed by any person of normal intelligence. All of the checks were for the benefit of the alleged donor or her daughter.
Further testimony reveals that a short time after the death of Mrs. Miller, Mr. Mills met with John L. F. Sipp, an attorney, who was not the fiduciary of this estate at that time but who has since been appointed the administrator of the estate and also the executor of the daughter’s estate who expired a comparatively short time after her mother. The respondent contends that the conversation had with him before he had official standing is not to be considered, especially so since the daughter was still living. The fact is, however, that Mr. Mills knew Mr. Sipp and in the conversation had with him shortly after the death of Mrs. Miller related that he had a power of attorney affecting the account in question but made no mention of a gift thereof from Mrs. Miller to his wife. Regardless of the fact that Mr. Sipp was not the fiduciary of the decedent and the fact that her daughter was still alive and since a conversation was had regarding the power of attorney it is difficult to appreciate why Mr. Mills made no mention of the gift and if the subject of this bank account were to be discussed at all, why not include the alleged gift, which was an outstanding factor.
In Beaver v. Beaver (117 N. Y. 421, 428) the court said: “ The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance to such intent, and on the part of the donee, acceptance.” There are many cases holding to the same effect.
The burden of proving a gift is upon the donee and he who attempts to establish title to property through a gift inter vivas as against the estate of decedent takes upon himself a heavy burden which he must support by evidence of great probative force which clearly established every element of a valid gift. (Matter of Kimmey, 273 App. Div. 142, 144.) The evidence must be convincing, clear and satisfactory and should be inconsistent with any other intention or purpose. (Matter of Schroeder, 113 App. Div. 204, affd. 186 N. Y. 537; Matter of Van Alstyne, 207 N. Y. 298; Matter of Bolin, 136 N. Y. 177.)
In Ward v. New York Life Ins. Co. (225 N. Y. 314, 322) the court said: ‘ ‘ the triers of fact will more carefully and critically scrutinize evidence offered against a dead person’s estate for *1063 the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was still alive to contract it ”, In Matter of Bolin (supra, p. 180) the court said, ‘ ‘ The law never presumes a gift. * * * The evidence must show that the donor intended to divest herself of the possession of her property and it should be inconsistent with any other intention or purpose ’ ’.
Assuming that all of the matters testified to by Mr. Mills if true, would establish a valid gift and that his testimony was not barred by section 347 of the Civil Practice Act, then the question of the amount of credibility to be attached thereto is to be determined by the court and the element of relationship between him and the alleged donee (his wife) is to be seriously considered. (Croker v. New York Trust Co., 245 N. Y. 17, 22.)
The case of Matter of Cardwell (295 N. Y. 916) referred to by the respondent in his brief as controlling in the ease at bar is untenable. The facts therein are not analogous. In the Cardwell estate the decedent said to the superintendent of the building in substance, I want you to give this envelope to my nephew. The envelope contained a bankbook. When the nephew next appeared the superintendent gave him the envelope. The nephew accepted the subject matter of the gift but said to the superintendent in substance, we will leave this in your desk until we know what happens. The uncle died the following day. In that case the court held that the superintendent was the agent of the donor and had completed the delivery. All of the elements necessary to establish a valid gift had been performed. When the nephew told the superintendent to leave the book in his desk until they knew what was going to happen he was not rejecting the gift but establishing it and incidentally was creating a bailment.
The court determines not to accept the testimony of the donee’s husband but is thoroughly of the opinion that the transfer was had for the convenience of the alleged donor and for the further purpose of preserving that particular asset.
Submit decree on notice granting the petition and in accordance herewith.