DELIGHT WARD MERNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73406. Promulgated May 24, 1935.

*J. Lenox Ward, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

MORRIS: Section 113 of the Revenue Act of 1928, to the extent applicable, provides as follows:

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*     \*     \*     \*     \*     \*     \*

(2) GIFT AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor \* \* \*.

The petitioner contends that the gift took place and was completed prior to December 31, 1920, and that the basis for such determination should be the fair market value at the date of gift.

The well established rule laid down in *Edson* v. *Lucas*, 40 Fed. (2d) 398; *Adolph Weil*, 31 B. T. A. 899; *J. D. Varnell*, 28 B. T. A. 231, and many other cases upon the subject, that in order to constitute a valid gift "There must be (1) an intention on the part of the competent donor to give; (2) an acceptance by a competent donee; and (3) a transfer of title, accompanied by delivery amounting to a complete surrender by the donor of the domination and control of the property", is the recognized rule in the State of Missouri. See the early case of *Harris Banking Co.* v. *Miller*, 190 Mo. 640; 89 S. W. 629, and the recent case of *Roethemeier* v. *Veith* (Supreme Court of Missouri), 69 S. W. (2d) 930, and cases there cited.

We are satisfied that the first two requisites named have been fully evidenced in this proceeding. In fact, that the events evidenced in this proceeding culminated in a valid and unmistakable gift of 150 shares of stock of William R. Warner & Co. is not even disputed by the respondent. Indeed, by his determination, he very properly so concedes. Therefore, our question narrows down to when that gift was consummated by "delivery." Or, more accurately stated, was there a consummation prior to December 31, 1920? If the gift was prior to that date we need not concern ourselves with the precise date upon which it was consummated; that is, whether by the events transpiring on Christmas alone or by the series of events which began prior to Merner's trip to New York and ending with his ultimate instructions to the company on December 30, 1920, to divide his 300 shares of stock into two certificates of 150 shares each, one in the name of this petitioner and the other in his own name.

What shall constitute the essential delivery, dominion, or control, as those words are used respecting gifts *inter vivos*, always depends upon the circumstances of each individual case and upon the environment of the parties. *Beaumont* v. *Beaumont*, 152 Fed. 55, and *Chambers* v. *McCreery*, 106 Fed. 364. "It, of course, inheres in the conception of the possession essential to a completed gift, that the donee should have such control, and such control only, of the subject matter of the gift, as is consistent with the ownership purported to be transferred to him." *Beaumont* v. *Beaumont, supra.*

It is said in *Adams* v. *Hagerott*, 34 Fed. (2d) 899:

\* \* \* If the subject of the gift is a chose in action, such as a bond, a note, or stock in a corporation, the delivery of the most effectual means of reducing the chose to possession or use, such as the delivery of the bond, or the note, or the certificate of stock, if present and capable of delivery, is indispensable to the completion of the gift.

And in *Owen* v. *Commissioner*, 53 Fed. (2d) 329:

\* \* \* While delivery is essential, manual delivery of the thing given is no more necessary in the case of a gift than in the case of a sale. A deed of gift is as effective to pass title as a bill of sale. [Citations.] Nor will

the failure to record the gift by a transfer of the stock on the books of the corporation prevent title from passing as between the donor and the donee. * * *.

In *Hoffman* v. *Commissioner*, 71 Fed. (2d) 929, reversing the Board at 28 B. T. A. 1264, it was orally agreed that one Dorman would buy Hoffman's shares in a corporation at their book value on July 1, 1926. On July 9 the contracting parties met at the office of Hoffman's attorney. Hoffman endorsed his stock certificates in blank and delivered them to the attorney to be turned over to Dorman "when certain formalities had been complied with." Delivery of the certificates so endorsed was not made until 1929. In reversing the Board and deciding that the sale of Hoffman's stock took place on July 9, 1926, the court said:

* * * The ground upon which it rested the conclusion that title did not pass on July 9th when the certificates were endorsed and delivered to the attorney, was that he was to hold possession of them until Dorman should perform his part of the bargain. But the law is well settled that non-delivery of possession would not preclude title to the stock passing forthwith to Dorman if such was the intention of the parties. *Hatch* v. *Oil Co.*, 100 U. S. 124, 132; *Hammer* v. *United States*, 249 F. 336 (C. C. A. 2); *Dahlinger* v. *Commissioner*, 51 F. (2d) 662 (C. C. A. 3); *Havenson* v. *Commissioner*, 51 F. (2d) 664 (C. C. A. 3); *Sanitary Carpet Cleaner* v. *Reed Mfg. Co.*, 159 N. Y. App. Div. 587; *Sherwood* v. *Commissioner*, 8 B. T. A. 103; *Swenson* v. *Commissioner*, 14 B. T. A. 675. Not only did the seller, the buyer and the party with whom the certificates were deposited testify that the sale was intended to be consummated on July 9th, but statements and conduct of the parties at that time and thereafter were entirely consistent with such intention.

In *Dulin* v. *Commissioner*, 70 Fed. (2d) 828, reversing the Board at 25 B. T. A. 1259, the petitioner was advised by her husband that he was transferring 510 shares of certain corporate stock to her. On December 23, 1920, he handed a certificate representing his stock ownership to the company's office manager, one Petree, whose duty it was to keep the stock certificate books, and whom he told he had given the stock to Mrs. Dulin, instructing him to transfer it on the books of the corporation. Due to the rush of Christmas business the certificate was laid aside until January 4, 1921, on which date it was discovered that Dulin had not endorsed the certificate. Having finally secured endorsement, the certificate was canceled and a new certificate was issued to the petitioner and delivered to Dulin for his wife. It did not appear that the certificate was ever personally delivered to Mrs. Dulin. The respondent held that the gift was not consummated in 1920 and his determination was upheld by this Board. In reversing the Board's decision and holding that the delivery of the certificate by Dulin to the transfer clerk of the corporation, coupled with instructions to transfer the stock to Mrs. Dulin, was a delivery to the corporation as trustee for Mrs. Dulin,

consequently " a complete surrender of control or dominion by Dulin ", the court said:

\* \* \* What seems to have been overlooked is that the thing Petree was instructed to do, and the only thing he was to do, was to transfer the stock upon the books of the corporation. This he could do neither as the agent of Dulin nor as the agent of Mrs. Dulin, but only in his capacity as an employee of the corporation and its transfer officer. This being so, it must follow that the delivery of the stock to Petree was a delivery of it to the corporation for the purpose of transfer, and the question to be decided is whether under such circumstances the corporation had imposed upon it some obligation or duty with respect to Mrs. Dulin so as to constitute it a trustee for her. It is conceded to be the law that while delivery of property given is necessary to complete a gift, such delivery is not required to be made directly to the donee, but that delivery may be to a third person for the benefit of the donee. In the case of such gifts, however, constructive delivery is recognized not on principles of agency, but because the third person becomes a trustee for the donee. *Smith* v. *Commissioner*, 59 Fed. (2d) 533 (C. C. A. 7) ; *Martin* v. *McCullough*, 136 Ind. 331; *Grissom* v. *Sternberger*, 10 Fed. (2d) 764 (C. C. A. 4) ; *Owen* v. *Commissioner of Internal Revenue*, 53 Fed. (2d) 329 (C. C. A. 9). Aside from the trust relationship which arises by operation of law between one to whom the subject of a gift is delivered and the beneficial donee, there is also a well recognized trust relationship between a corporation and the equitable or beneficial owner of its stock, and this principle seems to be recognized by the courts of Tennessee. *Caulkins* v. *Gas Light Company*, 85 Tenn. 683.

In addition to the untenable ground that Petree received the certificate as the agent of Dulin, the Board based its decision upon the ground that the certificate was not endorsed nor transferred upon the books of the corporation until after December 31, 1921. We think the Board in error in its application of the law. There is no longer doubt that delivery of stock certificates with the intention of conveying title thereto is effective as a conveyance without endorsement. Nor is the transfer of stock upon the books of the corporation indispensable as between donor and donee. *Grissom* v. *Sternberger*, supra ; *Owen* v. *Commissioner*, supra ; *Smith* v. *Commissioner*, supra ; *Johnston* v. *Laflin*, 103 U. S. 800, 12 R. C. L. 942. Of course, intention to transfer title must be clear, and the transfer of certificates upon the corporation's books is perhaps the best indication of such intention, *Marshall* v. *Commissioner*, 57 Fed. (2d) 633 (C. C. A. 6), but that intention may be otherwise shown is not open to dispute. \* \* \*

In the case of *In re Valentine's Estate*, 204 N. Y. S. 284, Valentine, five years before his death, executed and delivered a note to his wife in which, for a nominal consideration, and in consideration of natural love and affection, he assigned certain shares of capital stock to her saying, therein:

\* \* \* I have credited said five thousand (5,000) shares of the common stock of the Sabana-Grande Honduras Mining Company and the two thousand five hundred (2,500) shares of the common stock of the New York and Honduras Rosario Mining Company in my private cashbook to my wife Bertha A. Valentine. Now, therefore, I declare that I am indebted to my wife for the said five thousand (5,000) shares of the common stock of the Sabana-Grande Honduras Mining Company and two thousand five hundred (2,500) shares of the common stock of the New York & Honduras Rosario

Mining Company which are to be delivered to her and be a preferential claim on my estate before said estate be settled. In witness whereof, I have set my hand and seal this twenty-sixth day of November, 1915.

The court there held that the delivery of the note by the donor to his wife was symbolic of the delivery of the shares themselves and that a valid gift was thereby effected.

The decedent, in *In re Cohn*, 176 N. Y. S. 225, wrote out, and delivered to his wife, on her birthday, the following note:

West End, N. J., Sept. 20, 1911. I give this day to my wife, Sara K. Cohn, as a present for her (46th) forty-sixth birthday (500) five hundred shares of American Sumatra Tobacco Company common stock. LEOPOLD COHN.

The donor died six days after the delivery of the instrument. The testimony there was to the effect that the decedent handed the paper to his wife, saying: " * * * he gave it to her as a birthday present; that he had not possession of the stock, but as soon as he got it he would give it to her."

In holding that a valid symbolic gift was accomplished, the court said:

There is no doubt that it had been held in a long line of cases in this state that delivery of the thing given is, as a general rule, one of the essential elements to constitute a valid gift. [Citations.] But it is equally true that the rule requiring actual delivery is not inflexible. [Citations.] In *Beaver* v. *Beaver*, supra, it was said that the delivery may be symbolical, as where the donor gives to the donee a symbol which represents possession. It was held in *McGavic* v. *Cossum*, where an instrument of gift of bonds was delivered, that actual delivery of the bonds was excused where the only reason for not making delivery was the feeble condition of the donor and the fact that the bonds were in the custody of a bank in a nearby city. It was said in *Matter of Van Alstyne:*

The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. * * * It is true that the old rule requiring an actual delivery of the thing given has been very largely relaxed, but a symbolical delivery is sufficient only when the conditions are so adverse to actual delivery as to make a symbolical delivery as nearly perfect and complete as the circumstances will allow.

As the rule requiring delivery is clearly subject to exceptions, in order to apply it correctly in varying circumstances resort should be had to the reason for the rule. Under the civil law delivery was not requisite to a valid gift, but it was made a requisite by the common law as a matter of public policy, to prevent mistake and imposition. *Noble* v. *Smith*, 2 Johns. 52, 56, 3 Am. Dec. 399; *Brinckerhoff* v. *Lawrence*, 2 Sandf. Ch. 400, 406. The necessity of delivery where gifts resting in parol are asserted against the estates of decedents is obvious; but it is equally plain that there is no such impelling necessity when the gift is established by the execution and delivery of an instrument of gift. * * *

The Supreme Court of Missouri, in *Trautz* v. *Lemp*, 46 S. W. (2d) 135, had under consideration gifts *inter vivos* of corporate stock. It appears that the testator and his wife celebrated their golden

wedding anniversary on September 11, 1916, and that on that occasion he gave to each of his seven children 100 shares of corporate stock, leaving him 1,550 shares, represented by one certificate, in his name. Thereafter, in February 1917, the testator directed one of his sons, who was secretary of the company, to cancel the certificate for 1,550 shares and to issue to him in lieu thereof 15 certificates for 100 shares each and 1 certificate for 50 shares. The new certificates were entered on the books of the corporation in the testator's name, and at his direction were dated as of the date of his golden wedding anniversary. The new certificates were delivered to the testator, whereupon he called in another son and in the presence of this son he endorsed each of the new certificates in blank, and this son, at the testator's request, affixed his signature as a witness to the several blank endorsements. At that time the testator had three envelopes, upon each of which he wrote the following or similar legend:

Sept. 11th, 1916. This is the property of my son, * * *, given to him for his faithful work for the firm * * *. A. H. HANDLAN.

He then separated the new certificates, representing the 1,550 shares, into three lots, enclosed the certificates as so separated in the three envelopes and delivered the envelopes containing the shares to his third son, who was treasurer of the company. The court found ample evidence of an intention to make gifts of the shares, but decided that a valid gift *inter vivos* was not consummated because there was no delivery, that the delivery was to the treasurer, not as donee, but " as treasurer of the company for safe-keeping ", saying:

* * * It is true that the legends on the envelopes as well as what testator said to the sons show an intention to give this stock to the sons, but no language, either written or spoken, although expressing an intention to give, will amount to a gift unless that intention is executed by a complete and unconditional delivery of the subject matter of the gift, or a delivery of the written instrument by which the gift is evidenced.

Thus clearly indicating that had there been some written instrument by which to evidence the gift, even without delivery of the certificates, a valid gift would have been found.

That Merner not only intended to make a gift of 150 shares of his stock in William R. Warner Co. to the petitioner, but that he intended that the gift to take effect in 1920, we believe is clearly supported by the record. Any other conclusion would totally disregard the significance of the occasion, the spirit of the season as it was greatly heightened by the sorrowful death of one of their children and would render his Christmas " gift " a meaningless and empty gesture. He discussed the matter of this gift with the petitioner prior to his visit to New York and again upon his return home, at which

time he penned a note stating, among other things, that his Christmas gift to her was one half of his capital stock in William R. Warner & Co. As evidence of the fact that he intended the gift to take effect as a Christmas gift he expressed regret that he was unable to deliver the certificate itself. In this connection it appears, from the testimony of record, that Merner did not, in fact, go to his business after his return from New York, just prior to Christmas, until on or about December 30. Upon his return to his office he endorsed and forwarded his 300-share certificate to the company's New York office, instructing his secretary to issue two new certificates for 150 shares each, one in his name and the other in the name of this petitioner. And, as further evidence of his intention to complete the gift of this stock to the petitioner in 1920, he instructed the New York office to issue the new certificates " as of today ", meaning December 30, 1920.

We are not unmindful that Merner became repossessed of the new certificates in accordance with his instructions to the company to send them " to me ", but in our view of the case sufficient had already been accomplished by the acts done to complete a valid gift *inter vivos*, so that this repossession—especially in view of the fact that when the certificates were returned they were placed in a joint safety-deposit box at the bank, to which this petitioner had access—is of little or no significance. Repossession by the donor under the circumstances here was not inconsistent, on the contrary was entirely consistent, with the gift that, in our opinion, had already been effected.

For the foregoing reasons we are of the opinion that a valid gift was accomplished prior to December 31, 1920, and that the respondent erred in holding otherwise.

*Judgment will be entered under Rule 50.*