LUNSFORD RICHARDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85905.   Promulgated May 19, 1939.

*Will R. Gregg, Esq., Leslie D. Dawson, Esq.,* and *Allin H. Pierce, Esq.,* for the petitioner.

*Thomas H. Lewis, Esq.,* for the respondent.

928

MELLOTT: Respondent determined deficiencies in petitioner's gift tax in the amounts of $10,991.69 for the year 1932 and $13,298.25 for the year 1934. The deficiency for 1932 results from respondent's determination that petitioner made a gift of 55,699 shares of Vick Financial Corporation stock subsequent to June 6, 1932 (the effective date of the gift tax provisions, section 501 *et seq.*, Revenue Act of 1932). This deficiency will be considered first.

The facts relating to the 1932 transactions, which petitioner contends show gifts consummated prior to June 6 of that year and respondent contends show gifts consummated subsequent to such date, are as follows:

The petitioner and his wife, Margaret B. Richardson, are residents of Greensboro, North Carolina. Petitioner filed no gift tax return for the year 1932.

The Piedmont Financial Co. (hereinafter referred to as Piedmont), was a corporation organized under the laws of the State of New York in 1928 for the purpose of administering and managing financial and property affairs for certain corporations and individuals. Petitioner was its vice president and his brother H. Smith Richardson, its president, and they were its sole stockholders. George R. Dawson was its secretary-treasurer.

Piedmont maintained an office in New York. It managed investment accounts for the Richardson brothers, their wives, and others. The securities of petitioner and those of his wife were handled in separate accounts.

Petitioner, on or about the 18th day of May 1932, was the owner of 55,699 shares of the capital stock of the Vick Financial Corporation, of which 53,599 shares were registered in the name of Lunsford Richardson or L. Richardson, who was one and the same person, and the remaining 2,100 shares were in the custody of Piedmont, were registered in the name of nominees, Salkeld & Co. and Lewis & Co., and were deposited in a custodian account at the Bankers Trust Co. of New York, designated "Piedmont Account No. 3."

The 53,599 shares registered in the name of petitioner were evidenced by unendorsed certificates and were kept in petitioner's safe deposit box in the North Carolina Bank & Trust Co. at Greensboro, North Carolina. Certain certificates owned by his wife were also kept in that box. The only persons who had access to it were petitioner and his brother, H. Smith Richardson, the brother having access only when accompanied by George R. Dawson, or by Pearle Hubbard, an employee of the Vick Chemical Co., each of whom had one of the two keys to such box.

At the office of the Vick Chemical Co. in Greensboro, Pearle Hubbard kept a set of record cards showing the various securities owned by petitioner and separate cards showing the securities owned by petitioner's wife. These cards disclosed the amount of stock of the Vick Financial Corporation owned by each, the date of acquisition, the cost, the date of disposition, and other relevant data. Other records with respect to the securities of petitioner and his wife were kept by Piedmont in New York. It also kept records of her income and disbursements, prepared her income tax returns, and acted generally as her financial agent.

During the spring of 1932 petitioner discussed with his brother and some of his business associates the advisability of making gifts of stock to his wife prior to the time the gift tax law, which was then being considered by Congress, should become effective. On May 18, 1932, he told Pearle Hubbard that he was making a gift of all of his Vick Financial Corporation stock to his wife and directed her to make a notation on the cards "so that there couldn't be any conflict about it." On the same date petitioner told his wife he had made the gift to her and that he had requested Pearle Hubbard to change the record cards accordingly. His wife indicated her willingness to accept the gift. In accordance with petitioner's request, Pearle Hubbard made the following entry on the record cards showing petitioner's holdings of Vick Financial stock:

| Date | Amount | Certificate No. |
|------|--------|------------------|
| 5/18/32 | 55,699 | "Given to Mrs. R." |

No corresponding entry was at that time made on the card of petitioner's wife.

On May 27, 1932, petitioner, while in New York, informed Dawson and other officers of Piedmont that he had given his Vick Financial stock to his wife and asked Dawson to prepare whatever papers were necessary to have it transferred of record to his wife's name. Dawson examined the records of Piedmont and determined that petitioner owned 55,699 shares, 53,599 shares of which were registered either in the name of Lunsford Richardson or L. Richardson, and located in the safe deposit box at Greensboro, North Carolina, and 2,100 of which were registered in the name of the nominees heretofore mentioned. Thereupon and thereafter the following steps were taken:

(a) *In Connection with the 53,599 Shares in the Safe Deposit Box at Greensboro.*

Dawson told petitioner that it would be necessary for him to execute two assignments, one in the name of Lunsford Richardson, and the other in the name of L. Richardson, "so as to take care of

whichever way the stock was registered." The assignments were prepared by Dawson and read as follows:

[Assignment No. 1]

KNOW ALL MEN BY THESE PRESENTS

THAT, the undersigned for value received has bargained, sold, assigned and transferred, and by these presents does bargain, sell, assign and transfer unto (Mrs.) Margaret B. Richardson, % Vick Chemical Co., Greensboro, N. C., 53599 shares of the Capital Stock of       the certificate (s) for which stand (s) in the name of       , AND the undersigned hereby constitute (s) and appoint (s)       the true and lawful attorney of the undersigned, IRREVOCABLY, for and in the name and stead of the undersigned, to sell, assign, transfer, and make over, all or any part of the stock and for that purpose to make and execute all necessary acts of assignment and transfer thereof, and to substitute one or more persons with like power hereby ratifying and confirming all that the Attorney or his substitute or substitutes shall lawfully do by virtue hereof.

IN WITNESS WHEREOF, this instrument has been executed by the undersigned under the seal of the undersigned, this 27th day of May, 1932.

LUNSFORD RICHARDSON

[Assignment No. 2]

FOR VALUE RECEIVED, I, L. Richardson, hereby sell, assign, and transfer unto (Mrs.) Margaret B. Richardson       Shares of the Capital Stock of the Vick Financial Corporation standing in my name on the books of said represented by Certificate No.       herewith and do hereby irrevocably constitute and appoint       attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises.

Dated May 27, 1932.

L. RICHARDSON

These assignments were signed by petitioner in the presence of Dawson, who signed them as a witness. Dawson informed petitioner that it would be necessary to have the actual stock certificates before he could effect a transfer of record ownership. Petitioner handed the assignments to Dawson and told him to hold them until he (petitioner) returned to Greensboro and forwarded the certificates in his safe deposit box, whereupon Dawson should have the stock in petitioner's name transferred into the name of Margaret B. Richardson.

Petitioner returned to his home in Greensboro on June 9, 1932, removed the stock certificates covering 53,599 shares of Vick Financial Corporation stock from his safe deposit box, and had Pearle Hubbard mail them to Dawson in New York. On June 20, 1932, Dawson personally delivered these certificates, together with the written assignments, to the transfer agent, Bankers Trust Co., of New York, for transfer. The following day Dawson wrote a letter to the Bankers Trust Co. requesting that new certificates be issued in the name of Margaret B. Richardson. On June 23, 1932, the Bankers Trust Co. issued new certificates for 53,599 shares in the name of Margaret B. Richardson, and they were forwarded to peti-

tioner's wife, % Vick Chemical Co., Greensboro, North Carolina. When the certificates were received Pearle Hubbard made the following entry on the card of petitioner's wife:

| Date | Amount | Certificate No. | |
|---|---|---|---|
| 6/23/32 | 53,599 | CO 14047 | Trans. from |
| | | C 22003/7 | L.Richardson's |
| | | C 13341/3 | name |
| | | C 17603/4 | |

(b) *In Connection with the 2,100 Shares Standing in the Name of the Nominees.*

Piedmont had designated the Bankers Trust Co. of New York as its depository for stocks, bonds, and securities which it was holding for the Richardsons, their wives, and others. When petitioner, on May 27, 1932, informed Dawson and other officers of Piedmont that he had given his Vick Financial Corporation stock to his wife and asked Dawson to prepare the necessary papers to transfer this stock to her, Dawson informed him that it would not be necessary for him to execute any assignment in order to transfer to her the 2,100 shares in the custodian account because this stock was held in the name of nominees and no transfer of record ownership was required. Dawson also informed petitioner at that time that he (Dawson) as an officer of Piedmont, could have this stock removed from his account and placed in his wife's account. Petitioner asked Dawson to have this change made when the certificates in his safe deposit box at Greensboro were received by Dawson.

On June 25, 1932, Dawson, as secretary-treasurer of Piedmont, wrote a letter to the Bankers Trust Co. instructing it to "withdraw from the custodian account of Lunsford Richardson (Piedmont Account No. 3) 2,100 shares of Vick Financial stock * * * represented by certificates issued in the name of your nominee and deliver this stock against receipt to Mrs. Margaret B. Richardson (Piedmont Account No. 12) * * *." These instructions were complied with and on June 27, 1932, in a "Vault Transaction" the certificates were changed from Piedmont Account No. 3 to Piedmont Account No. 12.

Petitioner did not file a gift tax return for the year 1932, his theory and present contention being that the gift was made prior to June 6. The value of the property is not in controversy. If petitioner's contention be upheld there is no deficiency in tax for the year 1932. If the gift was made after June 6 then petitioner's alternative contention that the respondent erred in failing to allow him the specific exemption of $50,000 provided by section 505 (a) (1) must be considered.

Respondent urges, and determined the deficiency on the theory, that one of the essentials of a valid gift, i. e., delivery of the subject

matter of the gift to the donee, was lacking prior to June 6, 1932. He argues that prior to that date most of the stock which petitioner purported to transfer to his wife was where it had previously been, namely, in the safe deposit box in North Carolina, to which the supposed donee had or was given no access; that petitioner did not do all he reasonably could have done to divest himself of dominion; that delivery of the assignments was conditional and was not to become operative until petitioner forwarded the certificates from Greensboro; and that the gift was not completed by delivery until petitioner gave up dominion and control, which was either when he took the certificates from his safe deposit box and had them mailed to Dawson or when the record title was transferred, both of which events' occurred subsequent to June 6, 1932. As to the shares in the custodian account, respondent argues that they were not delivered to petitioner's wife prior to June 6, 1932, because petitioner did not order them transferred from his account to her account prior to that date, and that the gift of the securities in such account was not made until such instructions were carried out and the account actually transferred on the books of the custodian.

It is well settled that before there can be a completed gift the donor must surrender dominion and control of the subject matter of it. *Edson* v. *Lucas*, 40 Fed. (2d) 398; *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287; *Delight Ward Merner*, 32 B. T. A. 658; 79 Fed. (2d) 985; *Adolph Weil*, 31 B. T. A. 899; 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *Jackson* v. *Commissioner*, 64 Fed. (2d) 359; *Dulin* v. *Commissioner*, 70 Fed. (2d) 828. The "delivery" must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. *City Bank Farmers Trust Co.* v. *Hoey*, 23 Fed. Supp. 831; *In re Van Alstyne*, 207 N. Y. 298; 100 N. E. 802. Manual delivery of the thing given is not necessary, *Owen* v. *Commissioner*, 53 Fed. (2d) 329; and delivery need not be made directly to the donee. The gift may be executed by delivery to a third person for the benefit of the donee where there is an intention that present title and ownership shall pass and appropriate language is employed to effect such intention. *Grissom* v. *Sternberger*, 10 Fed. (2d) 764. In such instances "constructive delivery is recognized, not on principles of agency, but because the third person becomes a trustee for the donee." *Dulin* v. *Commissioner, supra*. The fact that such third person also acted as agent of the donor does not affect the validity of the gift nor prevent title to the subject matter from passing to the donee. *Bingham* v. *White*, 31 Fed. (2d) 574; *Copland* v. *Commissioner*, 41 Fed. (2d) 501; but "If the donor deliver the property to the third person simply for the purpose of his delivering it to the donee as the agent of the donor, the gift is not complete until the property has actually

been delivered to the donee." *Bickford* v. *Mattocks*, 95 Me. 547, 550; 50 Atl. 894, 895. Cf. *Vincent* v. *Putnam*, 248 N. Y. 76; 161 N. E. 425.

Applying these principles to the facts pertaining to the shares referred to above under (a)—i. e., the 53,599 shares in the safety deposit box in Greensboro, North Carolina—we are of the opinion that a complete gift was not made prior to June 6, 1932. No doubt petitioner intended to make a gift prior to that date; but one of the elements essential to the consummation of a valid gift was clearly missing, namely, a delivery as perfect as the nature of the property and surroundings of the parties reasonably permitted. On May 18, 1932, when petitioner told his wife that he had given her all of his Vick Financial stock and requested Pearle Hubbard to make the necessary notations on the record cards showing such gift, petitioner made no effort to place the stock within the dominion and control of his wife. He was in Greensboro and could have taken the certificates from his safe deposit box, arranged for their transfer of record to the name of his wife, and ordered that the new certificates be delivered to her; but he did not do so. Neither did he make any constructive or symbolic delivery of the subject matter of the gift. He was content to let the stock remain under his dominion and control in his safe deposit box, to which his wife had no access. Obviously, therefore, he did not on May 18, 1932, put the subject matter of the gift beyond recall; and until that was done no gift was consummated. *Burnet* v. *Guggenheim*, 288 U. S. 280, 286.

Did the acts performed by petitioner when he arrived in New York on May 27, 1932, have the effect of completing what was theretofore an incomplete gift? We think not. On that date petitioner apparently believed that he had effected a complete gift of his Vick Financial Corporation stock to his wife, because he told several officers of Piedmont that he had made such a gift. Nevertheless, he then, for the first time, initiated steps which resulted in the dominion and control of the stock passing from him to his wife. He asked Dawson, the secretary-treasurer of Piedmont, to prepare the papers necessary to have the stock transferred of record into her name. The evidence indicates that neither Dawson nor petitioner knew the number of shares in the safe deposit box at Greensboro which were in the name of "Lunsford Richardson" or the number which were in the name of "L. Richardson", though they knew the total number in the safety deposit box. Dawson therefore prepared the two assignments heretofore mentioned "so as to take care of whichever way the stock was registered", but informed petitioner that it would be necessary to have the actual stock certificates before he could effect the transfer of record ownership. Petitioner executed the assignments, handed them to Dawson, and told him to hold them until he (petitioner) returned to Greensboro and forwarded the certificates, whereupon

Dawson was to take such steps as were necessary to have the stock transferred into the name of petitioner's wife.

Petitioner argues that the delivery of the assignments was a symbolic or constructive delivery of the subject matter of the gift, and points to the testimony of Dawson to the effect that he was acting for Piedmont and as the agent of petitioner's wife when he received the assignments. While the evidence shows that Piedmont had acted as the financial agent of Margaret B. Richardson, we are not convinced that either it or Dawson was acting for her when the assignments were received from petitioner. Petitioner delivered them to Dawson for the purpose of effecting a transfer of the record title to the stock to her name when the certificates should be received from Greensboro. In our opinion (and this seems to be conceded by both parties) Dawson acted as the agent of petitioner when he prepared the assignments and signed them as a witness. We do not believe that a metamorphosis occurred and that he then received them from petitioner as the agent of petitioner's wife, attached them, as her agent, to the certificates afterwards received from Greensboro, and ordered the bank to issue new certificates in her name and forward them to her. In other words, in spite of Dawson's testimony, we are of the opinion that all of his acts were performed as the agent of petitioner rather than agent of petitioner's wife. The total absence of any evidence showing that any instructions were received by Dawson or Piedmont from her tends to support this conclusion.

But even if it be assumed that Dawson received the assignments as agent or trustee for petitioner's wife, we would nevertheless be compelled to hold that the delivery of the assignments in the form in which they were executed did not constitute a constructive or symbolic delivery of the stock to her. One of the assignments made no mention of the number of shares assigned, and the other, while specifying the number of shares, did not contain the name of the corporation whose shares were assigned. If petitioner had died prior to the time the certificates were received from Greensboro and attached to the assignments, or if he had refused to forward the certificates to Dawson, no court, in our opinion, would hold that the assignments as executed were sufficient to give the wife the ownership of the 53,599 shares of Vick Financial Corporation stock. We do not agree with petitioner that the sufficiency of the assignments was proved by the fact that they were accepted by the transfer agent and that the stock was actually transferred pursuant to them without any change being made. The transfer agent was justified in making the record transfer when he received the assignments together with the stock certificates attached thereto because it was then able to ascertain, by reference to the certificates, the number of shares which were to be transferred and the name of the corporation whose stock

was the subject matter of the transfer. Standing alone, however, the assignments were ambiguous, incomplete, and defective and did not serve to divest petitioner of his interest in the stocks.

The facts with reference to the 2,100 shares in the custodian account need not be restated in detail. These shares were held by Piedmont as the corporate bailee for petitioner. The only instructions he ever gave for their ultimate disposition—and all of the interested parties concede that title vested in the wife during the year 1932 as the result of a gift made by him—were given on May 27, 1932. On that date he advised three officers of Piedmont (excluding himself) that he had given this stock to his wife. The response of Piedmont's secretary was that "it would not be necessary to execute any assignment in regard to that stock because it was already in the nominee's name and no transfer of record ownership would be required." This, we think was tantamount to an unequivocal acknowledgment by Piedmont that the stock thenceforth was being held by it as the agent of the wife and the subsequent action confirms, rather than refutes, this view. Under the circumstances we are of the opinion that the gift of the 2,100 shares was consummated on May 27, 1932, rather than when the letter was written to the custodian or when it, in a "vault transaction", made the shift, both of which events occurred subsequent to June 6, 1932. Cf. *Tracy* v. *Commissioner*, 70 Fed. (2d) 93; *Voltz* v. *Treadway & Marlatt*, 59 Fed. (2d) 643; *Rose* v. *Commissioner*, 65 Fed. (2d) 616; *Kaufmann* v. *Commissioner*, 44 Fed. (2d) 144; *J. T. Hedrick*, 24 B. T. A. 444. We therefore hold that the respondent erred in determining that the value of the 2,100 shares is subject to the gift tax.

Petitioner alleges that if it be held he made a gift of the stock subsequent to June 6, 1932, and that he is therefore subject to tax, then he should be allowed the specific exemption of $50,000 provided by section 505 (a) (1) of the Revenue Act of 1932 which is as follows:

SEC. 505. DEDUCTIONS.

In computing net gifts for any calendar year there shall be allowed as deductions:

(a) *Residents.*—In the case of a citizen or resident—

(1) SPECIFIC EXEMPTION.—An exemption of $50,000, less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years.

The question is not discussed upon brief. Petitioner merely asserts that the deficiency should "be recomputed in a manner which will allow" him the $50,000 exemption. Respondent states that no claim was made for the exemption in the return for the year 1932, which is manifestly true since no return was filed. Pointing out that the specific exemption was claimed in the year 1934 and allowed in computing the tax for that year, he says: "Obviously the exemption is not allowable in both years and while its transfer from one year to

the other affects only the amount of interest payable, the respondent is of the opinion that the petitioner should be held to the election which he made in filing his 1934 return."

It is doubtful whether petitioner made such an "election" in claiming the specific exemption in the year 1934 that it can not now be claimed in the year 1932. Generally, the doctrine of election applies only where there are two or more remedies, all existing at the time of election, and which are inconsistent with each other. If the remedies are not cumulative the choice of one makes all others unavailable. But we have no such situation here. Our first question is whether or not petitioner is subject to a gift tax for the year 1932. We have held that he is. Then, says petitioner, he is entitled to the $50,000 specific exemption allowed by section 505 (a) (1) of the Revenue Act of 1932. Since the act specifically grants him the exemption, and since, in our opinion, he has not heretofore "elected" to claim it in some other year, we hold that in recomputing the deficiency for 1932 the specific exemption of $50,000 should be allowed.

The deficiency for the year 1934 resulted from respondent's determination that petitioner was not entitled to exclusions totaling $25,000 ($5,000 for each of the trusts created by petitioner for his five children) in computing the amount of gifts subject to tax in that year. Respondent now concedes that he erred in denying the claimed exclusions. Cf. *Thomas E. Wells*, 34 B. T. A. 315; affd., *Commissioner v. Wells*, 88 Fed. (2d) 339.

But petitioner is not entitled to a judgment of no deficiency in tax for the year 1934. In his return for that year he claimed, and the respondent in determining the deficiency allowed, a specific exemption of $50,000 under section 505 (a) (1), *supra*. It is the duty of this Board to determine the correct deficiency in tax and do full justice to the parties. Cf. *Commissioner* v. *Edison Securities Corporation*, 78 Fed. (2d) 85. Justice in this instance requires that, because of our allowance of the $50,000 specific exemption as a deduction in 1932, the same deduction claimed in 1934 must be disallowed even though respondent did not urge such disallowance in connection with his determination for the latter year. *Crowell* v. *Commissioner*, 62 Fed. (2d) 51; *Beaumont* v. *Helvering*, 73 Fed. (2d) 110; *J. & O. Altschul Tobacco Co.* v. *Commissioner*, 42 Fed. (2d) 609. We hold, therefore, that petitioner is not entitled to a $50,000 specific exemption for 1934. Inasmuch as respondent has not asked for an increased deficiency for that year, no greater deficiency than that determined can be allowed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL, STERNHAGEN, VAN FOSSAN, BLACK, LEECH, and OPPER dissent.